UNITED STATES, Appellee,

v.

Curtis A. TAYLOR, Private First Class,
U.S. Marine Corps, Appellant.

No. 98–1140.
Crim.App. No. 97–0508.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 28, 1999.

Decided July 19, 2000.

COX, S.J., delivered the opinion of the Court, in which CRAWFORD, C.J., and SULLIVAN, J., joined. GIERKE, J., filed an opinion concurring in part and dissenting in part, in which EFFRON, J., joined.

For Appellant: *Lieutenant Dale O. Harris,* JAGC, USNR (argued).

For Appellee: *Lieutenant Margaret E. Jolly,* JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler,* USMC, *Commander Eugene E. Irvin,* JAGC, USN, and *Lieutenant Timothy E. Curley,* JAGC, USNR (on brief); *Lieutenant Commander JoAnn W. Melesky,* JAGC, USN.

Senior Judge COX delivered the opinion of the Court.

The charge of attempted murder[1] in the instant case arose on June 18, 1995, in a Marine barracks located at Camp Pendleton, California. The granted issues concern the prosecution's reference in its opening statement to inadmissible evidence about gang-related clothing, evidence concerning previous misconduct, and testimony concerning appellant's confession.[2] The Court of Criminal Appeals summarized the circumstances leading to the charges in this case as follows:

> On the evening of Saturday, 17 June 1995, several Marines gathered in a barracks room to drink and socialize before they proceeded to the enlisted club. Among the Marines present were the appellant and LCpl Neal. LCpl Neal took exception to what he viewed as the appellant's unjustified boasting about his prior involvement in gangs. He confronted the appellant, calling him a joke and a liar. The two Marines nearly came to blows. However, calmer heads prevailed and pulled the two apart. In a statement the appellant made to the Naval Criminal Investigative Service (NCIS), he admitted that he was so enraged that he formed the intent to kill LCpl Neal.[3]

> When the appellant awoke the next morning, he was still so angry that he decided to kill LCpl Neal by stabbing him. After dressing, the appellant removed a Gerber knife from its sheath and placed it in his right pants pocket. The appellant then walked to the room where LCpl Neal was hanging around, waited in the doorway, and, as LCpl Neal left the room for breakfast, stuck the knife into his left side just below the rib cage.

> The appellant stated that he stabbed LCpl Neal with "a lot of force" because he "did not want him to be able to defend himself." Believing that the appellant had only "weakly" punched him, LCpl Neal asked: "Is that all you've got?" When appellant pulled the knife out, LCpl Neal realized he had been stabbed; he ran to the bathroom to treat the wound. The appellant followed him and kicked at the door. Other Marines reported the stabbing, confronted the appellant, and eventually disarmed him.

---

1. In violation of Article 80, Uniform Code of Military Justice, 10 USC § 880. A charge of aggravated assault, Art. 128, UCMJ, 10 USC § 928, arising out of the same underlying circumstances was dismissed by the Court of Criminal Appeals as multiplicious.

2. As framed by appellant, the granted issues are:
   I. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY REFUSING TO GRANT A MISTRIAL AFTER TRIAL COUNSEL BASED HIS OPENING STATEMENT ON INADMISSIBLE EVIDENCE.
   II. WHETHER THE MILITARY JUDGE ERRED BY ADMITTING, OVER DEFENSE OBJECTION, EVIDENCE OF UNCHARGED MISCONDUCT CONTAINED IN APPELLANT'S PRETRIAL STATEMENT TO THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.
   III. WHETHER PLAIN ERROR OCCURRED WHEN THE MILITARY JUDGE IMPROPERLY ADMITTED INHERENTLY INCONSISTENT STATEMENTS AS INCULPATORY HEARSAY AGAINST APPELLANT AT TRIAL WITHOUT AFFORDING HIM THE PROPER OPPORTUNITY TO CONFRONT THE WITNESS AS PROVIDED BY THE SIXTH AMENDMENT'S CONFRONTATION CLAUSE.

3. Citations to the record of trial omitted.

LCpl Neal was rushed to the hospital with a 1–1/2" stab wound in his abdomen. The Navy surgeon operated for over 2 hours, repairing several perforations in LCpl Neal's small intestines. The doctor testified that, without this surgery, LCpl Neal would have suffered "overwhelming infection." Additionally, had the knife entered his body a few inches higher or to the right, it could well have penetrated a vital organ and killed LCpl Neal outright. Fortunately, LCpl Neal recovered fully from the wound.

Unpub. op. at 2–3.

Appellant was then taken into custody and transported to the NCIS office. After waiving his rights under Article 31(b), UCMJ, 10 USC § 831(b), appellant was interviewed by NCIS Agents Sean Sweeney and Patrick Hurt. Both NCIS agents were present during the entire interview, and Agent Hurt typed up appellant's sworn statement. After appellant had signed his statement, it was reviewed by Agent Sweeney. Agent Sweeney took notes during appellant's interview that further reflected admissions made by appellant. These additional admissions were recorded on a Results of Interview document.

On various dates between November 27, 1995, and February 2, 1996, appellant was tried by general court-martial composed of officer and enlisted members. Contrary to his pleas, he was found guilty by the court-martial of attempted murder and aggravated assault. He was sentenced to confinement for 32 years, forfeiture of all pay and allowances, reduction to E–1, and a dishonorable discharge. The convening authority approved the sentence and, except for the dishonorable discharge, ordered the sentence executed. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

Particular facts relevant to each issue are incorporated within the discussion of the issue itself.

## I

In the first issue, appellant alleges that the military judge abused his discretion by refusing to grant a mistrial after trial counsel based his opening statement on inadmissible evidence. Trial defense counsel had sought during a motion in limine to exclude testimony regarding appellant's gang affiliation, including appellant's wearing of gang colors on the day in question. The military judge granted this motion in part and denied it in part. He determined that, although appellant's gang affiliation was relevant in regard to the previous night's argument, which ultimately led to the stabbing, the testimony that gang members would dress in a certain way to kill someone was inadmissible.[4]

However, in his opening statement, trial counsel commented that, "when [appellant] put on his colors, ... that meant something; that in that environment and that world, you don't take a knife and stick somebody to teach them a lesson." Also, "Franklin will tell you, you don't teach lessons where they come from. You don't. It's a cold, hard fact. Because that person, if he lives, he's coming back to kill you. So you got to kill somebody once a gun or knife is produced."

After the close of trial counsel's opening statement, appellant requested a mistrial. The military judge denied the motion and determined that a curative instruction was the appropriate remedy.[5] The military judge

---

4. According to the military judge, the evidence was inadmissible

> to the extent that the government intends to offer evidence that there exists some common practice for gang members, either in this gang or in other gangs to dress themselves up in a particular way before going out to commit a particular crime and that the accused therefore must have been intending to commit this crime simply because he was so attired on this occasion. I don't see that as being relevant. I'm not sure that I even see that as being logically

relevant because I consider the link there very frankly to be very tenuous. But in any event, even if it were logically relevant, I specifically find that the danger of unfair prejudice would substantially outweigh the very minimal probative value of that particular item of testimony.

5. The military judge instructed the court as follows:

> Mr. President and Members of the Court, during his opening statement, you may have heard the trial counsel make reference to various

concluded by asking the members if they understood the instruction and could abide by it. The members acknowledged that they would follow the military judge's instruction. Appellant's counsel did not object to the instruction as it was given.

Later in the trial, several members of the court-martial posed questions about gang colors that the defense counsel objected to.[6] The military judge sustained counsel's objection to each of these questions and did not ask the questions. Additionally, he informed the members that they were not to speculate as to why the questions were not asked. During his instructions on findings, the military judge also instructed the members, among other things, that the arguments of counsel were not evidence; that innocence or guilt had to be based on the evidence presented, and that only matters properly before the court should be considered.

Appellant contends that the military judge abused his discretion by denying the request for a mistrial after the trial counsel devoted much of his opening statement to discussing inadmissible evidence. His argument is that the curative instruction was an inadequate remedy for the prejudice he suffered from that opening statement. We disagree.

■ According to RCM 915(a), Manual for Courts–Martial, United States (1995 ed.), "[t]he military judge may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." "The power to grant a mistrial should be used with great caution, under urgent circumstances, and for plain and obvious reasons ... [such as] when inadmissible matters so prejudicial that a curative instruction would be inadequate are brought to the attention of the members...." RCM 915(a), Discussion. This Court has previously referred to a mistrial as a "drastic remedy" that the military judge should order only when necessary to "prevent a miscarriage of justice." *United States v. Garces*, 32 MJ 345, 349 (CMA 1991).

■ The decision to grant a mistrial lies within the discretion of the military judge; an appellate court must not reverse the decision absent clear evidence of abuse of that discretion. *See United States v. Dancy*, 38 MJ 1, 6 (CMA 1993). A curative instruction is the "preferred" remedy for correcting error when the court members have heard inadmissible evidence, as long as the instruction is adequate to avoid prejudice to the accused. *See United States v. Skerrett*, 40 MJ 331, 333 (CMA 1994). Absent evidence to the contrary, this Court may presume that members follow a military judge's instructions. *See United States v. Loving*, 41 MJ 213, 235 (1994); *United States v. Holt*, 33 MJ 400, 408 (CMA 1991).

Appellant mounts a twofold attack on the substitution of the curative instruction in question for a mistrial. We consider each of his arguments in turn.

First, appellant characterizes the wording of the instruction as "cursory," "incomplete, confusing, and erroneous." However, appellant's attorney did not object to the wording of the instruction as given, thereby waiving any issue involving that instruction. RCM 801(g), 920(f).

---

customs and practices with regard to battle and fighting that are common in this particular gang to which the trial counsel referred to in his opening statement. That portion of the trial counsel's opening statement was improper, that evidence is not admissible, and the statements of the counsel are not admissible evidence.

In other words, the statements of counsel generally are not evidence that may be considered by you. You may only consider the testimony that you see and hear from the witnesses and from the documents and exhibits presented before you in this trial.

Each of the members is specifically instructed to disregard that portion of the trial counsel's opening statement because there will be no evidence of that matter before the court.

6. One member asked, "Are there special occasions in which you [LCpl Franklin] would wear colors?" Another member queried, "What are the times when a gang member would wear a bandana?" Also, the question was put, "What occasion would a gang member wear a bandana, i.e., battle?"

Second, appellant makes much of the trial members' inadmissible questions to LCpl Franklin. However, these questions do not constitute evidence that the members of the court-martial did not understand or would not follow the military judge's instructions. The judge's instructions to them were to only consider evidence provided from the trial testimony. The judge did not order them to refrain from asking any questions concerning the subject matter of a particular motion in limine that he had granted in part. Arguably, these questions demonstrate that some members' curiosity may have been aroused by the trial counsel's opening reference to gang colors. However, the mere fact of the questions does not lead us to conclude that the members refused to follow the judge's instruction to only consider the evidence presented from the witnesses *when deliberating.* Thus, the presumption that the members followed the military judge's instructions has not been rebutted. *Loving, supra* at 235; *Holt, supra* at 408.

■ Accordingly, we agree with the Court of Criminal Appeals that the military judge did not abuse his discretion by refusing to grant appellant a mistrial.

## II

The second granted issue involves the military judge's decision to admit certain portions of appellant's pretrial statement. Appellant argues that these portions of the statement were evidence of inadmissible uncharged misconduct.

Specifically, appellant points to four matters in the statement: (1) an admission that appellant had been involved in minor criminal activity before joining the Corps; (2) an incident at Camp Johnson, North Carolina, during which appellant showed a knife to deter his roommate, PFC Pendegrass, from "messing" with appellant; (3) an incident during which appellant armed himself with a Gerber knife in response to a disagreement with

LCpl Hibbard; and (4) a statement that appellant had fired a weapon at a person before appellant became a Marine.

■ Generally, a military judge's ruling on admissibility of evidence is reviewed for abuse of discretion. *See, e.g., United States v. Johnson,* 46 MJ 8, 10 (1997). Thus, the challenged action must be "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous" to be overturned on appeal. *United States v. Travers,* 25 MJ 61, 62 (CMA 1987).

■ Under Mil.R.Evid. 404(b), Manual, *supra,* evidence of "other crimes, wrongs, or acts" may be admitted if the proffered evidence: (1) reasonably supports a finding that appellant committed the crime, wrong, or act; (2) makes a fact of consequence more or less probable; and (3) possesses probative value that is not substantially outweighed by the danger of unfair prejudice. *See United States v. Miller,* 46 MJ 63, 65 (1997). The test for admissibility, therefore, is "whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime and thereby to suggest that the factfinder infer that he is guilty, as charged, because he is predisposed to commit similar offenses." *United States v. Castillo,* 29 MJ 145, 150 (CMA 1989).

■ The military judge denied the defense motion to redact the portions of the pretrial statement in question because "blanking out the entire paragraph ... might invite the members to speculate about what is being kept from them and it may cause them to actually infer something adverse to the accused when in fact, he was engaged in a perfectly lawful act." The court also reasoned that the knife incident involving LCpl Hibbard was logically relevant to show that appellant owned a Gerber knife similar to the knife used in the Neal stabbing.

Instead of blanking out the entire paragraph, the military judge provided cautionary instructions.[7]

7. The judge's instructions were as follows:
There was evidence before you in Prosecution Exhibit 1 that the accused may, on a previous occasion, have threatened another Marine with a knife while the accused was stationed at

Camp Johnson in North Carolina. With regard to this portion of Prosecution Exhibit 1, you are advised that a person may, acting in self-defense, in order to frighten or discourage an assailant, threaten more force than he is

We note that appellant has not offered any facts or circumstances which would show that the use of the disputed evidence was not limited by effective instructions by the military judge. As there is no evidence to the contrary, the members are presumed to have not considered this evidence at all with respect to the findings of guilt. *See United States v. Orsburn*, 31 MJ 182, 188 (CMA 1990).

Accordingly, we have no need to second-guess the military judge's careful decision to admit the evidence in question. The military judge decided that admitting appellant's entire sworn confession was less prejudicial to the defense than the alternative of blackening out the disputed portion. Since appellant's theory at trial was that the members should only believe that portion of his confession where he stated he did not intend to kill LCpl Neal, we believe the military judge's concern about the members questioning the truth of the confession, if parts of it were redacted, was well-founded.

Our learned colleagues find the admission of this unredacted confession, without similar limiting instructions, to have prejudiced appellant as to sentence. We respectfully disagree. The instructions accompanying the admission of the exhibit given at the time it was introduced simply do not vanish from the record. To the contrary, the instructions follow the exhibit and limit its value throughout the trial.

Finally, in light of the overwhelming evidence against appellant, even if admission of this evidence was error, we believe it to be harmless error, even as to sentence.

## III

Appellant's third and final contention is that he was denied his Sixth Amendment right to confront the witnesses against him when NCIS Agent Hurt testified about admissions made by appellant in the NCIS interview. Appellant contends that Agent Hurt never actually heard appellant make the statements about which he testified in court; but instead, after the execution of the sworn statement, Agent Hurt asked Agent Sweeney about any additional information contained in Agent Sweeney's notes, at which time Agent Sweeney relayed to him the statements he testified to at trial.

Appellant argues that Agent Sweeney was the sole competent witness to the statements he had annotated in his notes, and that allowing Agent Hurt to testify to Agent Sweeney's recollections violated appellant's Sixth Amendment right to confront the witnesses against him. Appellant concedes that Mil. R.Evid. 805, in conjunction with Mil.R.Evid.

legally allowed to actually use, under the circumstances. A person who reasonably fears an immediate attack is allowed to display or threaten the use of an ordinarily dangerous weapon, or an object likely to produce grievous bodily harm, even though the person does not have a reasonable fear of serious harm, as long as the person does not actually use the weapon or means, or attempt to use it, in a manner likely to produce grievous bodily harm.

Therefore, with regard to the accused's use of a knife to defend himself in the incident at Camp Johnson, described in Prosecution Exhibit 1, you are advised that if the facts are as described by the accused in his statement, then the accused, on that occasion was merely exercising his legal right of self-defense. In so doing, the accused violated no law. You may, therefore, not conclude from this evidence that the accused is a bad person or has criminal tendencies and that he therefore committed the offense as charged.

Evidence that the accused may, on a previous occasion, have threatened a Lance Corporal Kibber [sic] with a knife may be considered by you for the limited purpose of its tendency, if any, to show that the accused did actually possess a knife of the type allegedly used in the 18 June 1995 incident with Lance Corporal Neal. You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and that he therefore, committed the offense as charged. There is evidence before you in Prosecution Exhibit 1 that on a prior occasion, before coming into the Marine Corps, the accused may have fired a weapon at someone. The accused has not been charged with any offense as a result of this incident and there is no evidence before the court to show whether this act was lawful or not. With regard to this incident, you are advised that the accused is entitled to the presumption of innocence. In the absence of evidence tending to show guilt, you must presume that the accused is not guilty of any crime stemming from this incident. You may not, therefore, conclude from this evidence that the accused is a bad person or has criminal tendencies and that he therefore, committed the offense as charged.

801(d)(2)(A) and 803(6), generally supports admission of evidence such as in this case. However, appellant claims a violation of the Confrontation Clause of the United States Constitution, on the theory that the Government failed to demonstrate that the witness to the statements used against appellant at trial was unavailable to testify.

Appellant's argument founders on the fact that NCIS Agent Hurt's testimony makes it clear that both he and Agent Sweeney were present throughout the entire interview. Thus, the assertion that NCIS Agent Hurt never heard the statements made by appellant is contradicted by the testimony in this case. There is no evidence in the record that NCIS Agent Hurt was testifying from Agent Sweeney's notes, but rather the record makes it clear that he was testifying based on his own personal knowledge as to appellant's admissions.

What is more, NCIS Agent Hurt was subjected to cross-examination when he testified in this case. At trial, appellant did not object to his testimony regarding the admissions in question, nor did appellant cross-examine him about them. We therefore do not believe that appellant has established any error in this regard, let alone plain error.

### Conclusion

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

GIERKE, Judge, with whom EFFRON, Judge, joins (concurring in part and dissenting in part):

I agree with the majority's resolution of the first and third issues. With respect to the second issue, I agree with the majority that any error in failing to redact appellant's confession was harmless with respect to findings. I part company with the majority with respect to the unredacted confession's impact on the sentence.

Although the military judge limited the members' consideration of the uncharged misconduct in his instructions on findings, he did not provide any limiting instructions on sentence. Instead, he instructed the members that they were "required to consider not only the evidence adduced at the sentencing hearing, but also the evidence that was presented during the trial on the merits and so that would include all the exhibits." The military judge then directed the members' attention specifically to "Prosecution Exhibit 1, the statement of the accused to NIS and Prosecution Exhibit 2, the knife, and Prosecution Exhibit 3, the right side of the accused's service record book." In short, the military judge directed the members to consider the inadmissible evidence of uncharged pre-service conduct.

Appellant received a lengthy sentence to confinement. It is reasonable to presume the members followed the instructions of the military judge and considered and weighed all the evidence on sentencing, including the inadmissible portions of the unredacted statement. Thus, I am not satisfied that the inadmissible portions of the unredacted statement did not affect the sentence. I would remand the case to the Court of Criminal Appeals for sentence reassessment.