BAKER, Chief Judge,
with whom OHLSON, Judge, joins (dissenting):
I agree with the majority that prosecutorial misconduct occurred, which is the rubric *162 used to describe the repeated improper questioning and comment exhibited in this case. I also agree that the proper method for determining whether such misconduct was prejudicial to a substantial right is through application of the factors outlined in United States v. Fletcher, 62 M.J. 175, 184 (C.A.A.F.2005). However, for the reasons I stated below, I respectfully dissent in this ease. Furthermore, I join Judge Ohlson’s dissent in this ease.
As the Supreme Court stated in Smith v. Phillips, “the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.... [T]he aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused.” 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (citations and internal quotation marks omitted). The essential question is not whether trial counsel’s conduct was improper, but whether it resulted in “a failure to observe that fundamental fairness essential to the very concept of justice.” Donnelly v. DeChristoforo, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (citation and internal quotation marks omitted).
I agree that the prosecutorial misconduct in this case was sustained. There were eighteen instances of impermissible evidence coming before the members. Twelve of these involved improper character evidence. The military judge also sustained three relevance objections, two hearsay objections, and one objection on the grounds of psychotherapist-patient privilege. In addition, during closing argument, trial counsel improperly invoked the convening authority. The misconduct was also severe. As noted, the majority of improper conduct involved the introduction of character evidence. Character evidence is particular anathema to U.S. notions of fair trial, running the risk as it does that members may be swayed to convict not on the basis of evidence, but because the defendant is a bad person deserving of punishment. Thus, it is in evaluating the final two Fletcher factors where I break with the majority. Upon analyzing all three factors, I believe that the correct conclusion is that Appellant did not receive a fair trial, as I am not convinced on this record that members convicted Appellant on the basis of admissible evidence alone.

Measures Adopted to Cure the Misconduct

It is evident that the military judge attempted to neutralize any prejudice resulting from trial counsel’s conduct. As documented by the majority, his interjections were frequent and forceful. He called numerous Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a) (2012), sessions in which he instructed trial counsel as to what was and was not admissible. In addition, the military judge delivered curative instructions on most, though not all, occasions when improper evidence did come before the members.[1]
This Court has determined that, absent evidence to the contrary, it will presume that members follow a military judge’s instructions. United States v. Taylor, 53 M.J. 195, 198 (C.A.A.F.2000). However, this ease begs the question: when is too much, too much? The Supreme Court, in Donnelly, also established that curative instructions are not in fact cure-alls, noting that “some occurrences at trial may be too clearly prejudicial for such a curative instruction to mitigate their effect.” 416 U.S. at 644, 94 S.Ct. 1868. This notion that a curative instruction is not automatically assumed sufficient to remedy all misconduct is echoed in a number of circuit court decisions, including from the United States Courts of Appeals for the Third, Ninth, and Eleventh Circuits. Moore v. Morton, 255 F.3d 95, 119-20 (3d Cir.2001); United States v. Weatherspoon, 410 F.3d 1142, 1152 (9th Cir.2005); United States v. Kerr, 981 F.2d 1050, 1054 (9th Cir.1992); United States v. Simtob, 901 F.2d 799, 806 (9th Cir.1990); United States v. Crutchfield, 26 F.3d 1098, 1103 (11th Cir.1994).
*163 Despite repeated instructions from the military judge about what sort of evidence was proper, trial counsel solicited impermissible evidence — evidence that came before members — that Appellant claimed he had used prescription drugs to get high, that he had been accused of stealing a motorcycle, that he had been prescribed medication used to treat schizophrenia, that he had a history of nonjudieial punishments, that he failed to pay his rent, that possible drug paraphernalia was found in his room, and that his behavior had been angry and erratic. In the presence of the members, trial counsel committed often multiple violations of numerous rules of evidence including Military Rule of Evidence (M.R.E.) 402 (relevance), M.R.E. 404 (character evidence), M.R.E. 513 (psychotherapist-patient privilege), and M.R.E. 802 (hearsay); she invoked the convening authority in violation of Article 37, UCMJ, 10 U.S.C. § 837 (2012); and she impermissibly made arguments in closing calculated to inflame passions and prejudices. Rule for Courts-Martial (R.C.M.) 919(b) Discussion.
Given the extent, pervasiveness, and character of the prosecutor’s improper questions and comments, looking at the context of the entire trial, I believe that the curative instructions were not sufficient to counteract the impermissible material that leaked in. The critical question is not whether the military judge delivered curative instructions but whether they were enough to ensure that members did indeed make their decision based solely on the evidence, not on the basis that Appellant was a bad person.

The Weight of Evidence Supporting Conviction

Appellant was ultimately convicted of three out of eight specifications: wrongful use of spice (Article 92, UCMJ), making a false official statement (Article 107, UCMJ), and larceny of military property (Article 121, UCMJ). I agree with the majority that the evidence supporting the later two convictions was strong. In addition, very little of the prosecutorial misconduct touched upon the larceny and false official statement charges.
However, the evidence supporting the spice charge was weaker and largely circumstantial. Two witnesses, Karen Carney and Lance Corporal Kimberly D.N. Powers, testified that they saw Appellant smoke something in a glass pipe that he told them was spice. Ms. Carney also took one hit of the substance Appellant was smoking but stopped there, as she did not like the taste, and she felt none of its effects. There was no drug test, no analysis of the substance Appellant called spice, and no testimony as to the characteristics or effects of smoking spice. Aside from this, the Government included some highly circumstantial evidence solicited from Lance Corporal Joshua N. Teets. Teets testified that Appellant told him spice could not be detected in a drug test, the inference being Appellant knew so much about spice because he had smoked it. Also of note is the fact that the Marine Corps regulation banning the use of spice describes it as “a mixture of medicinal herbs laced with synthetic eannabinoids or cannabinoid mimicking compounds” and forbids the actual or attempted possession or use of any “derivative, analogue, or variant” of the substance. Dep’t of Defense, U.S. Marine Corps Forces, Pacific Order 5355.2A, Prohibited Substances para. l-3.b. (July 30, 2010); This description is narrow enough that it is feasible members could find that possession and use of an untested substance that Appellant simply called spice did not provide sufficient evidence that Appellant actually used or possessed a variety of spice covered by this order.
In addition, much of the improper evidence that came before the members did touch upon the drug charges, including Gunner’s Mate 3 Malaea Robidart’s testimony that she had overheard drug-related conversations having to do with Appellant and that he told her he used prescription medications to get high, Corporal P. Kelly’s testimony that he found a glass bowl in Appellant’s room, testimony referencing Appellant’s behavior changes including recent angry and sporadic behavior, reference to the disintegration of Appellant’s marriage possibly due to drug-related issues, and evidence indicating his overall poor character, including a history of previous nonjudieial punishments. This *164 could be enough to convince members that Appellant was the type of person who would do drags and tip any doubts they had in the “beyond reasonable” direction.
Though he ultimately denied Appellant’s R.C.M. 917 motion to dismiss, the military judge himself commented about the shakiness of the spice charge. “I’m sensitive to the situation that you’re in where you don’t have good evidence to convict the guy of what you believe he did, but that’s the Ame^ iean judicial system.” Overall, the Goverm ment’s ease on the spice charge was weak, as the military judge noted. Thus it is conceivable the prosecutor’s misconduct swayed members towards a conviction they might not otherwise have made. In context, the fact that members acquitted on five of eight charges can cut both ways. It can suggest that members carefully followed the military judge’s instruction. But it can also suggest that members found the Government’s case close and were open to persuasion, in which case character evidence may have made a difference, either directly or indirectly, by giving members a margin of comfort that, even if there was doubt, Appellant deserved what he got.
Trial counsel’s misconduct was not “slight or confined to a single instance, but ... pronounced and persistent, with a probably cumulative effect upon the jury which cannot be regarded as inconsequential.” Fletcher, 62 M.J. at 185 (alteration in original) (citation and internal quotation marks omitted). Trial counsel did commit prosecutorial misconduct and the scope and pervasiveness of that misconduct was sufficient to interfere with Appellant’s substantial right to a fair trial. Although the prejudice is clearest with respect to the spice charge, in light of the pervasive nature of the misconduct, I would set aside the changes and authorize a rehearing on all charges. Therefore, I respectfully dissent.

. It is hard to find fault with the military judge’s actions, especially in the absence of a motion for a mistrial. However, this case does prompt the question: at what point should a military judge sua sponte declare a mistrial or call in the supervising trial attorney?