**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Airman Basic CHRISTOPHER R. WOODARD**
**United States Air Force**

**ACM S32170**

**11 March 2015**

Sentence adjudged 9 July 2013 by SPCM convened at Royal Air Force Mildenhall, United Kingdom. Military Judge: Jefferson B. Brown.

Approved Sentence: Bad-conduct discharge, confinement for 3 months, and forfeiture of $1,010.79 pay per month for 3 months.

Appellate Counsel for the Appellant: Lieutenant Colonel Jane E. Boomer and Captain Lauren A. Shure.

Appellate Counsel for the United States: Major Roberto Ramírez and Gerald R. Bruce, Esquire.

Before

HECKER, TELLER, and KIEFER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

KIEFER, Judge:

Consistent with his pleas, the appellant was convicted at a special court-martial of making a false official statement and wrongful use of marijuana on divers occasions, in violation of Articles 107 and 112a, UCMJ, 10 U.S.C. §§ 907, 912a. Officer members announced the appellant's sentence to be a bad-conduct discharge, confinement for

3 months, and forfeiture of $1,010.79 pay for 3 months.[1] The convening authority approved the sentence as adjudged.

The appellant raises three assignments of error on appeal: (1) whether the bad-conduct discharge should be set aside due to an alleged failure of the members to follow the military judge's instructions, (2) whether the convening authority improperly approved a forfeiture allegedly announced as $1,010.79 pay for 3 months, and (3) whether the appellant's sentence was inappropriately severe.

*Background*

The appellant pled guilty to two specifications of using marijuana on multiple occasions between February and June 2013. The appellant also pled guilty to lying to his first sergeant about his drug use. The appellant elected to be sentenced by a panel of officer members.

During voir dire of the members, the military judge received an affirmative response from the panel when he asked the following question:

> I assume that everyone has been briefed or at least heard about the Air Force Drug Policy. That Policy, however, is an administrative policy, and unless I otherwise instruct you, has absolutely no bearing on your considerations in this court-martial and should not be a factor in determining an appropriate punishment. I will provide you the law in this case and it will be your responsibility to apply the law to the facts of this case. Will all members be able to do that?

Later within the judge's voir dire when discussing the members' ability to consider the full range of punishment, the military judge again mentioned an "administrative policy" (apparently referring back to the drug policy) and instructed that a "punitive discharge is a punishment" and is "not a force management tool or anything along those lines." He also told the members: "There is nothing that in the Air Force policy or otherwise, that you should look to or rely on to in anyway (sic) feel compelled that you have to impose a particular punishment, to include a punitive discharge."

The military judge then went on to again describe the potential punishment as ranging from no punishment to the maximum punishment. All the members agreed they would reach a sentencing decision on an individual basis and not solely on the nature of

---

[1] The forfeitures portion of the sentencing worksheet differed from the announced sentence in that the worksheet stated the forfeitures were to be $1,010.49 per month for 3 months. As discussed in this opinion, the panel's announcement of the adjudged forfeitures and its discrepancy from the sentencing worksheet is an issue in this appeal.

the offenses. In response to a voir dire question posed by defense counsel, the members all agreed they would consider a sentence that did not include a punitive discharge and did not feel compelled to adjudge one.

In his unsworn statement, the appellant stated his commander had initially recommended him for administrative discharge with a "General discharge" but had then elected to pursue a court-martial. The appellant admitted he continued to use marijuana throughout this time period. He also stated:

> [U]nder Air Force regulations, my Commander is required to once again process me for administrative discharge following my trial. I am aware that I may be discharged Under Other than Honorable Conditions. This is the worst service characterization that I can receive from an administrative discharge. Because of this, I may lose all my Veterans benefits. . . . I ask that you consider all of these things when you are deciding what an appropriate punishment is. . . .

In lieu of the Government submitting rebuttal evidence to provide context to the commander's decisions on administratively discharging the appellant, the parties entered into a stipulation of fact. It stated the commander had elected to withdraw the administrative discharge package after he learned the appellant had an additional positive urinalysis on 27 March 2013.

The military judge instructed the members that evidence of a potential administrative discharge was a "collateral consequence" and therefore is inadmissible outside of an unsworn statement. The panel was told "whether the accused will or should be administratively discharged is not a decision before you. . . ." The military judge also provided a standard punitive discharge instruction as well as a more detailed instruction for a bad-conduct discharge.[2]

---

[2] At one point during the sentencing instructions, the record of trial indicates the military judge informed the panel they could adjudge a dishonorable discharge or a bad-conduct discharge. In fact, as he advised the panel on multiple occasions, the only authorized punitive discharge was a bad-conduct discharge. Assuming the record of trial is accurate with respect to the mention of a dishonorable discharge, it does not appear this issue was repeated at any subsequent point in the proceeding or became an issue with the members. The written instructions provided to the members, the arguments of counsel, and the sentencing worksheet did not reference a dishonorable discharge. Additionally, as described above, the military judge expressly clarified with the panel that the only discharge available to them was a bad-conduct discharge. Neither party raised this matter as an assignment of error or part of this appeal. We have considered the potential impact of this apparently single reference to a dishonorable discharge at one point in the proceeding. We find that to the extent such a reference was made in the presence of the members, it was error. However, given the totality of the record before us and the failure of either party to raise this issue as a matter on appeal, we find any error that may have occurred at that one point in the proceeding was harmless beyond a reasonable doubt. We find no evidence that the single reference to a dishonorable discharge prejudiced the appellant or the proceedings in any way.

During sentencing argument, trial defense counsel told the members it was not about a "firing decision" or whether the members wanted to personally serve with the appellant in the future. Referring back to the appellant's unsworn statement, defense counsel asked the panel to use their common sense to consider whether the appellant was going to remain in the Air Force. He urged the panel that the lifelong sentence of a bad-conduct discharge is not appropriate for the appellant.

After deliberations began, the members asked a question of the bailiff, which in open court was presented as whether "a punitive discharge, a bad conduct discharge was the only potential discharge that was an issue before them." The military judge then responded, "[t]he answer to that is yes." The military judge then directed the members to the written instructions about punitive discharges and the unsworn statement. The military judge addressed the issue of an administrative discharge stating, "[a]dministrative discharge is a force management tool, it is not a punishment."

The president of the panel then asked, "[i]f after confinement, if that's elected, if there is no discharge given by us members, what happens at that point?" To this, the military judge responded,

> That is a separate issue. Whether or not he can, could, and what the process would be for an administrative discharge is not an issue for your concern. . . . In other words, don't impose a punitive discharge because you think, "oh I wonder if he would be administratively discharged." There are different rules and things that would kick [in] and that is not an issue that is before you. . . . That is why I specifically said at the beginning, the zero tolerance drug policy, that should not be considered by you because that comes in under the administrative discharge aspect of it. So focus on what an appropriate punishment would be.

The panel members all agreed that this clarified their role and responsibility in adjudging a sentence.

*Members' Failure to Follow Sentencing Instructions*

As part of the appellant's clemency submission, defense counsel alleged the panel sentenced the appellant to a bad conduct discharge "as a means of separating A[irman] B[asic] Woodard from the Air Force, rather than for its proper purpose of punishment." On appeal, he contends this means the panel failed to follow the military judge's sentencing instructions.

The defense clemency submission included the following:

> . . . Defense specifically sought post trial feedback following the conclusion of AB Woodard's case. While members agreed that AB Woodard's actions were foolish, no doubt stupid, when it came to determining a sentence the members "would have preferred the option for a discharge less than a BCD." In fact, according to one member this was the biggest sticking point in the deliberations as the members believed that a discharge less than a bad conduct discharge was not allowed by law. This was apparent even during the proceedings as the members returned to the courtroom to seek clarification on this point. . . .

> [T]he members [sic] understanding of a bad conduct discharge was not grounded in fact or law. Law prevents the defense counsel from arguing collateral consequences during a sentencing argument; thus, preventing me from arguing that AB Woodard would be discharged from the service administratively based solely on his guilty plea. However, because of this incorrect perception, the members indicated in feedback that they believed a bad conduct discharge was the only mechanism by which AB Woodard could be removed from the service. Thus, such a punishment was adjudged as a means of separating AB Woodard from the Air Force, rather than for its proper purpose of punishment. This misperception cannot be repaired absent a grant of clemency.

Neither the defense clemency submission nor any information offered during this appeal provides any further context or substance to the statement allegedly made by a member or members. Even if this comment in a defense clemency submission constitutes facts that can be considered by this court on appeal, we find it cannot be used to impeach the otherwise facially valid sentence.[3]

Mil. R. Evid. 606(b) expressly forbids the use of evidence of any statement by a panel member about the panel's deliberative process except in certain limited circumstances, none of which are implicated here.[4] "The purpose of this rule is to

---

[3] In this context, we are commenting on the facially valid punitive discharge portion of the sentence adjudged and announced. We note there is still an issue of the announcement of the forfeiture in the sentence discussed later in this opinion.

[4]

> Upon an inquiry into the validity of the findings or sentence, a member may not testify as to any matter or statement occurring during the course of the deliberations of the members of the court-martial or, to the effect of anything upon the member's or any other member's mind or

protect freedom of deliberation, protect the stability and finality of verdicts, and protect court members from annoyance and embarrassment." *United States v. Loving*, 41 M.J. 213, 236 (C.A.A.F. 1994) (internal quotation marks omitted). Here, the appellant has merely made a suggestion of a member comment. The proffered comment does not indicate prejudicial information or influence was provided to or brought to bear upon any member. Accordingly, we find the appellant has not offered any evidence, in either form or substance, implicating the exceptions noted in Mil. R. Evid. 606(b) for inquiring into the circumstances of the appellant's sentence.

Similarly, a sentence can only be impeached "when extraneous prejudicial information was improperly brought to the attention of a member, outside influence was improperly brought to bear upon any member, or unlawful command influence was brought to bear upon any member." Rule for Courts-Martial (R.C.M.) 1008. The discussion to this Rule refers back to the discussion of R.C.M. 923 related to impeachment of findings and generally notes that "[u]nsound reasoning by a member, misconception of the evidence, or misapplication of the law is not a proper basis for challenging" an otherwise facially valid result. R.C.M. 923, Discussion. The appellant's proffer does not indicate improper information, influence, or unlawful command action was provided to or brought to bear upon any member. Therefore, "even if the court member's comment was evidence that the court members may have failed to heed the military judge's" instructions, "consideration of such evidence was prohibited by Mil. R. Evid. 606(b)." *See United States v. Combs*, 41 M.J. 400, 401 (C.A.A.F. 1995).

Further, our analysis of the totality of the instructions given and the interactions with the court members indicates the members were properly instructed on the interplay between a punitive discharge, an administrative discharge and the panel's role in fashioning an appropriate sentence for the appellant. Absent evidence to the contrary, we presume members follow a military judge's instructions. *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000). To the extent the appellant is arguing that his sentence is unlawful because a member or members, in discussing the case with defense counsel after the fact, may have preferred an option different than a punitive discharge, we disagree. Even with a liberal reading of the alleged comments, it reflects nothing more than the feeling of someone after the fact and does not indicate any instructions, procedures, or rights were not properly observed during the course of trial. A desire to have a different option does not mean that the members failed to properly deliberate and

---

emotions as influencing the member to assent to or dissent from the findings or sentence or concerning the member's mental process in connection therewith, except that a member may testify on the question whether extraneous prejudicial information was improperly brought to the attention of the members of the court-martial, whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence. Nor may the member's affidavit or evidence of any statement by the member concerning a matter about which the member would be precluded from testifying be received for these purposes.

Mil. R. Evid. 606(b).

reach a lawful sentence based on the punishment elements available and explained to them by the military judge. The members fashioned a sentence, to include the punitive discharge element, that was within the lawful range of punishment available for the offenses of which the appellant was found guilty.

*Adjudged Forfeitures*

In the sentencing instructions, the panel was advised they could sentence the accused to forfeit up to two-thirds pay per month for a period of twelve months. Consistent with R.C.M. 1003(b)(2), the panel was told the sentence should include an amount in "whole dollars" to be forfeited and the number of months the forfeiture is to continue. The panel was told the maximum forfeiture for the appellant was $1,010.79 pay per month for 12 months.

Following sentence deliberations, the members provided the sentencing worksheet to the military judge for review prior to announcement in court. The military judge determined the worksheet was "in proper form." According to the certified transcript of the proceeding, the president then announced the forfeiture portion of the sentence as, "[t]o forfeit $1,010.79 of your pay for three months." However, the sentencing worksheet indicated the forfeitures were "$1,010.79 pay *per month* for 3 months." (emphasis added). This same language was included in the special court-martial order.

Here, in order to be within the jurisdictional maximum *and* comply with the requirement that the adjudged forfeitures be given in a "whole dollars" amount, the maximum forfeiture the appellant faced per month was $1,010, not $1,010.79. We have previously held that when "the duration of the forfeitures is not specified . . . their duration shall not exceed one month." *United States v. Jones*, 60 M.J. 964, 972 (A.F. Ct. Crim. App. 2005). If an adjudged sentence is illegal or ambiguous, a convening authority may either return the case for reconsideration or "may approve a sentence no more severe than the legal, unambiguous portions of the adjudged sentence." R.C.M. 1009(d). Furthermore, a sentence may not be increased following the announcement of the sentence. *United States v. Baker*, 32 M.J. 290 (C.M.A. 1991). Accordingly, we only affirm forfeitures in the amount of $1,010 pay for 1 month and address this in our decretal paragraph.

*Sentence Appropriateness*

The appellant also challenges the severity of his sentence, in particular the bad-conduct discharge. This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by

considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

In evaluating the sentence in this case, to include the bad-conduct discharge, we find the sentence as adjudged, with the exception of the forfeitures, to be correct in law and fact based on the entire record. The appellant was found guilty pursuant to his pleas of wrongfully using marijuana on multiple occasions. Evidence in the record supports that the appellant's conduct consisted of at least eight uses, some of which occurred after he knew he was under investigation and facing administrative discharge for drug use. He also received nonjudicial punishment for another use of marijuana at a time that predated the charged misconduct in his case. Further, the appellant admitted lying about his drug use to a senior noncommissioned officer.

While we recognize the seriousness of a bad conduct discharge, , based on all of the facts and circumstances of this case, including the appellant's service record and background, we find the approved sentence (as modified) to be appropriate.

*Conclusion*

The approved findings are affirmed. We affirm only so much of the sentence as provides for a bad-conduct discharge, confinement for 3 months and forfeiture of $1,010 pay for 1 month. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859a, 866(c). Accordingly, the findings and sentence, as modified, are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court