# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, MORRIS, and JUETTEN
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist DHANPAOLO A. MALABRIGO**
**United States Army, Appellant**

ARMY 20230105

Headquarters, U.S. Army Alaska
Robert E. Murdough, Military Judge
Colonel William D. Smoot, Staff Judge Advocate

For Appellant: Captain Robert W. Duffie, JA; William E. Cassara, Esquire (on brief and reply brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Lisa Limb, JA; Captain Vy T. Nguyen, JA (on brief).

31 July 2025

------------------------------------
SUMMARY DISPOSITION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

JUETTEN, Judge:

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of attempted robbery, one specification of conspiracy to commit aggravated assault, one specification of willfully disobeying a superior commissioned officer, one specification of disobeying a general regulation, two specifications of drunk driving, one specification of assault consummated by a battery, one specification of simple assault, and one specification of burglary, in violation of Articles 80, 81, 90, 92, 113, 128, and 129, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 881, 890, 892, 913, 928, and 929 [UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, 14 months of confinement, and reduction to the grade of E-1. The convening authority took no action on the sentence.

This case is before the court for review pursuant to Article 66, UCMJ. Appellant contends the military judge abused his discretion when he twice denied defense motions for mistrial.[1] We disagree.

## BACKGROUND

On 30 October 2021, during an off-post Halloween party described by one witness as the "[b]iggest ever in Fairbanks," Alaska, Specialist (SPC) ██ confronted appellant and others about someone breaking into his vehicle and stealing pistols and money collected from partygoers. In response, appellant offered to help SPC ██ retrieve his property if SPC ██ discovered who took it.

Days later, SPC ██ contacted appellant and requested his assistance retrieving the stolen items from Private First Class (PFC) ██ whom SPC ██ suspected stole the money and pistols. Appellant and SPC ██ received PFC ██'s barracks number, room number, and door code from Ms. ██, PFC ██'s ex-girlfriend. They then went to confront PFC ██, wearing "COVID" face masks and beanies to conceal their identity. Using the door code, they entered SPC ██'s room late in the evening, where he was lying in bed. Specialist ██ was wielding a pistol, and appellant had his hands in his pockets. Specialist ██ identified himself and demanded the return of the stolen money. When PFC ██ responded slowly, SPC ██ struck him in the face with the pistol. Specialist EH then held PFC ██ down in his bed with a pistol to his head while appellant searched his room and found only $20 in PFC ██'s wallet. Specialist ██ handed PFC ██ his own phone and demanded he send $300 via Cash App. After PFC ██ received his phone, and while SPC ██ and appellant where discussing whose Cash App should receive the money, PFC ██ messaged a group text chain with members of his platoon and alerted them of his situation. Ultimately, several members of PFC ██'s platoon came to his barracks room and detained SPC ██. In the ensuing confusion, appellant escaped past the rescuing soldiers.

When law enforcement arrived, they took SPC ██ into custody and recovered two handguns in his possession. The victim and his platoon members were unable to identify appellant to law enforcement. However, in exchange for a favorable plea agreement, SPC ██ identified appellant as his accomplice. In the course of their investigation, one of the handguns recovered from SPC ██ was traced to Sergeant (SGT) ██ who testified he sold the handgun to appellant.

---

[1] We have considered appellant's four other assignments of error and determine they merit neither discussion nor relief.

2

At trial, two Criminal Investigation Division (CID) agents, Special Agent (SA)█ and SA █, each testified that upon arriving to question SGT █ about the handgun, he spontaneously stated "Oh f*** Malabrigo, what have you done?" This spontaneous statement was not disclosed to the defense before trial and was never recorded in the agents' case file. After their testimonies, both agents were advised by the military judge not to speak about their testimony or the case with anyone other than counsel or the accused. A third CID agent, SA█, testified regarding whether a phone extraction occurred on SPC █'s phone and stated there was an attempted forensic evaluation, but it failed due to a lack of password.[2] During a recess, defense counsel observed the special agents conversing in the hallway. Defense counsel also observed that two members of the panel were also present in the hallway while the conversation was taking place. After defense counsel notified the military judge, both the agents and the panel members were recalled and questioned individually during an Article 39a hearing, outside the other panel members' presence.[3]

When questioned, the special agents provided the court with conflicting testimony. Special Agent █ and SA █ claimed they had only spoken to trial counsel about the case file. However, SA█ testified that his colleague asked if an extraction was completed on SPC █s phone. To which, he responded in the affirmative, despite previously testifying otherwise. The agent further explained that he testified this way because he was not sure if the extraction was a "Cellebrite extraction."

Following the witness testimony, defense counsel moved for a mistrial based on an improper conversation among the temporarily and permanently excused special agents and a Rule for Courts-Martial [R.C.M.] 701(a)6) violation. The defense counsel argued that the conflicting testimony called into question the CID agents' character for truthfulness and further asserted the government's failure to disclose the excited utterance "Oh f*** Malabrigo, what have you done?" constituted a discovery violation meriting a mistrial.[4] Ultimately, the military judge denied defense's motion for a mistrial but remedied the inconsistent statements by striking

---

[2] Only SA █ was temporarily excused and subject to recall by either party or the court-martial.

[3] Both members of the panel who were present in the hallway during the discussion indicated they did not hear the conversation between the agents.

[4] For the defense counsel's argument, the CID agents' character for truthfulness was intertwined with the lack of recording and disclosure of the "Oh f*** Malabrigo, what have you done?" utterance.

the testimonies of SA ▮ and SA ▮ [5] The military judge offered to defense the option to impeach or strike the testimony of SA ▮, and defense elected to also strike that testimony.

After the defense case-in-chief, the government indicated it intended to call three witnesses in rebuttal,[6] including SPC ▮, an individual the defense suggested was the real perpetrator. During an Article 39a hearing, the government's proffer for the rebuttal witnesses led to a discussion of SPC ▮'s statement to CID and that one of the special agents told SPC ▮ his dog tag was found at the scene of the crime.[7] Neither party possessed SPC ▮'s statement to CID. The proffer also included discussion of a Snapchat conversation between SPC ▮ and Ms. ▮ the victim's ex-girlfriend, to which defense objected, citing that the information was not previously disclosed to the defense. Consequently, the defense again moved for a mistrial. During another Article 39a hearing, SPC ▮ testified, confirming he was told by CID he was a person of interest because his dog tags were found at the scene of the crime. Further, SPC ▮ testified he had knowledge of the crime and had spoken with the victim's ex-girlfriend about the offenses charged. Following this testimony, defense counsel again moved for a mistrial. The military judge, again, denied defense's motion for a mistrial but found the government had committed a *Jencks Act*[8] violation as it related to SPC ▮'s statement to CID. The military judge

---

[5] The military judge found that the utterance, "Oh f*** Malabrigo, what have you done?" to the extent it was relevant, was only relevant to bolster the veracity that SGT ▮ did sell the handgun to appellant. The military judge noted that the witnesses' testimony was of modest probative values, that the members could follow the limiting instruction that their testimony was stricken, and that the striking of their testimony was just under the circumstances under R.C.M. 703(g)(3)(D).

[6] The government sought to rebut the defense implication that SPC ▮ was the actual person with SPC ▮ committing the crimes, in part, by introducing calls that SPC ▮'s phone received from appellant's girlfriend shortly after he was detained. The government intended to tie the appellant to the incoming phone calls by arguing appellant was using her phone or her as a proxy.

[7] There was no evidence presented that SPC ▮'s dog tag was found by CID at the crime scene.

[8] 18 U.S.C. § 3500.

remedied the government's error by offering to prohibit SPC CN from testifying on rebuttal.[9] However, the defense ultimately elected to elicit testimony from SPC CN.

## LAW AND DISCUSSION

This court reviews a military judge's decision denying defense motions for a mistrial for "clear evidence" of an abuse of discretion. *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000). A military judge may declare mistrial if "such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." R.C.M. 915(a). However, a mistrial is a "drastic remedy" that the military judge should only implement when no lesser remedy is sufficient. *United States v. Garces*, 32 M.J. 345, 349 (C.M.A. 1991). "The power to grant a mistrial should be used with great caution, under urgent circumstances, and for plain and obvious reasons." R.C.M. 915(a) discussion.

Appellant argues the military judge twice abused his discretion by denying defense's motions for a mistrial. Looking to the first motion for a mistrial, appellant asserts the military judge erred because the conflicting testimony of the special agent witnesses constituted "circumstances . . . which cast substantial doubt upon the fairness of the proceedings." R.C.M. 915(a). Appellant further argues this conflicting testimony, when compounded by the government's violation of R.C.M. 701(a)(6) in failing to disclose the "spontaneous utterance" of SGT ▆, warranted mistrial. However, appellant fails to articulate why the military judge's action in striking the witness testimony of all testifying special agents was insufficient to address the agents' inconsistent Article 39(a) testimony and the undisclosed "spontaneous utterance" of SGT ▆ Appellant also fails to articulate how a mistrial would more comprehensively address these issues.[10] While appellant argues the agents' testimony "was simply too big a bell to unring," we disagree. This court presumes "absent contrary indications, that the panel followed the military judge's instructions . . . ." *United States v. Sewell*, 76 M.J. 14, 19 (C.A.A.F. 2017).

---

[9] In crafting a remedy, the military judge noted that to the extent it also amounted to a R.C.M. 701(a)(2) violation, the witness' testimony was excluded under R.C.M. 914.

[10] Of note, appellant points out the striking of the special agents' testimony also eliminated evidence that CID did not find any calls from SPC ▆'s phone to appellant. However, it is unclear why the defense could not have elicited this evidence during its case-in-chief.

Appellant, again, asserts the military judge abused his discretion by denying his second motion for a mistrial when the government failed to disclose "evidence "[a]dversely affect[ing] the credibility of [a] prosecution witness . . . ." R.C.M. 701(a)(6)(D). Appellant emphasizes the compounding nature of the government's multiple violations of R.C.M. 701(a)(6) and the impact these violations had on defense preparation and strategy. On appeal, appellant argues, while robust, the military judge's remedies were insufficient to adequately address the toll the government's repeated discovery violations imposed on the defense. As articulated in appellant's brief, "[s]o many strategic decisions had been made and implemented by the time that the defense learned of this discovery violation, that it could not recover." While the defense argues it may have used the undisclosed evidence to impeach the agents, it is unclear why impeaching the agents would benefit the defense more than eliminating their testimony entirely. Notably, the military judge not only excluded the witness testimony of all three special agents in appellant's case, but he also offered to exclude the testimony of SPC ██ a rebuttal witness whom the defense suggested was the real perpetrator; an offer the defense ultimately decided to refuse, instead electing to elicit testimony from SPC ██ Consequently, the military judge's remedies more than adequately addressed any potential violations of R.C.M. 706(a)(6).

For the foregoing reasons, we determine the military judge did not abuse his discretion by twice denying defense motions for mistrial.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge POND and Judge MORRIS concur.

FOR THE COURT:



JAMES W. HERRING, JR.
Clerk of Court