UNITED STATES, Appellee

v.

Anthony T. YOUNG, Corporal
U.S. Marine Corps, Appellant

No. 00-0279

Crim. App. No. 98-0505

United States Court of Appeals for the Armed Forces

Argued December 5, 2000

Decided June 29, 2001

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and BAKER, J., joined. EFFRON, J., filed an
opinion concurring in part and in the result. SULLIVAN, J.,
filed an opinion concurring in part and in the result and
dissenting in part.

Counsel

For Appellant:  Major Eric P. Gifford, USMC (argued); Lieutenant
    Mari-Rae Sopper, JAGC, USNR (on brief).

For Appellee:  Lieutenant James E. Grimes, JAGC, USNR (argued);
    Colonel Marc W. Fisher, Jr., USMC, and Lieutenant Commander
    Philip L. Sundel (on brief); Colonel Kevin M. Sandkuhler,
    USMC, Commander Eugene E. Irvin, JAGC, USN, and Lieutenant
    Timothy E. Curley, JAGC, USNR.

Military Judge:  T. G. Hess

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION.**

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of conspiracy to distribute marijuana and distribution of marijuana, in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 USC §§ 881 and 912a, respectively. The adjudged and approved sentence provides for a bad-conduct discharge, confinement and partial forfeiture of pay for 36 months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed.

This Court granted review of the following issue:

WHETHER THE LOWER COURT ERRED IN HOLDING THAT THE ADMISSION OF A TAPED CONVERSATION BETWEEN APPELLANT AND A COOPERATING WITNESS OCCURRING 23 DAYS AFTER THE CHARGED CONSPIRACY, INCLUDING WHAT COULD BE INTERPRETED AS THE PLANNING OF A FUTURE DRUG TRANSACTION, WAS PROPER TO SHOW APPELLANT'S INTENT WITH RESPECT TO THE PRIOR CHARGED CONSPIRACY, WHERE THAT PORTION OF THE CONVERSATION CONSTITUTED EVIDENCE OF UNCHARGED MISCONDUCT.

For the reasons set out below, we affirm.

## Factual Background

On December 26, 1997, Private Frank Smith asked appellant if he could store some marijuana at appellant's off-base apartment, and appellant agreed. The following day, Smith and appellant were approached by Religious Program Specialist Seaman Apprentice Berrian in the parking lot of the barracks. Berrian asked Smith if he could obtain two ounces of marijuana for him. Unbeknownst to appellant and Smith, Berrian was then acting as a cooperating witness with Naval Criminal Investigative Service. Smith agreed to return to the base later that night and sell some marijuana to Berrian.

2

Smith and appellant then went to appellant's apartment, where the marijuana was stored. Smith testified that at the apartment, he found two bags of marijuana, including the one he had stored. Smith offered to split the money with appellant. Appellant agreed and said, "Go ahead." Smith then took both bags of marijuana back to Camp Pendleton and sold them to Berrian for $100.00. At trial, Berrian corroborated appellant's part in the conspiracy by testifying that Smith returned to the base with two bags of marijuana and told him that one of the bags belonged to appellant. Appellant's agreement with Smith to sell the marijuana and split the money, and Smith's act of selling the marijuana to Berrian, were the factual basis for the charges against appellant.

On January 3, 1996, Berrian approached Smith and complained that he was shortchanged in the December 27 marijuana purchase. Smith replied that appellant was the one who measured out the amounts of marijuana, and he speculated that appellant probably smoked some of it while it was stored at his apartment.

On January 17, 1996, while wearing a recording device, Berrian approached appellant and asked to buy more marijuana from him. A recording of the conversation was introduced and played at trial. A written transcript also was provided to the court members. The transcript identifies Berrian as "CW" (cooperating witness) and appellant as "Young." It reads as follows:

CW:      Hey, Young . . . .

* * *

CW:      Hey, (unintelligible) . . . about an ounce?
YOUNG:  Probably Friday.

3

CW:      For sure Friday?

YOUNG:   I can't say for sure, cause I ain't
         talked to my boy in a couple of weeks
         since s--- happened . . . .

CW:      Alright, because Smitty told me that
         whatever . . . You, that you pinched off
         whatever.  From the s--- that I got sold
         you know what I'm saying? . . . .

YOUNG:   I aint pinch out s--- man . . .

CW:      So just ah . . . .  if you can . . .

YOUNG:   Don't go to Smitty no more man . . . .
         because (unintelligible) . . . I'm
         p---ed off at him as it is cause he
         didn't pay me my f----- money.

CW:      You want me to just get with you Friday?

YOUNG:   Friday . . .

CW:      Alright . . . Hey, I'm comin in the morning of
         Friday . . .

YOUNG:   Alright . . .

CW:      So we can do it at lunch or whatever . . . .

YOUNG:   Yeah . . .

CW:      Alright . . . .

At trial, defense counsel made a limited objection to the tape and transcript under Mil. R. Evid. 404(b), Manual for Courts-Martial, United States (2000 ed.).[1]  Defense counsel conceded that part of the taped conversation was admissible to show appellant's role in the conspiracy; however, he objected to the part of the conversation concerning the subsequent uncharged drug transaction.  The prosecution argued that it was not

---

[1] All Manual provisions are identical to the ones in effect at the time of appellant's trial.

offering the evidence to show that appellant was a bad person or a drug dealer. Instead, it argued that during the conversation on January 17, appellant admitted his role in the December 27 drug transaction, and it was necessary to show that the January 17 conversation occurred during a drug negotiation in order for the members to understand that appellant was admitting his participation in the December 27 drug transaction. Trial counsel argued "[t]hat you can't understand the accused's statements about the 27 December drug deal unless you know [that on 17 January] they're talking about a drug deal." Trial counsel argued that statements like "Don't go to him anymore" and "I didn't pinch out anything" were meaningless without evidence that they were uttered during a subsequent drug transaction.

The military judge overruled the defense objection and admitted the evidence. Immediately after the members heard the tape and read the transcript, the military judge gave the following limiting instruction:

> Now, members of the court, before we proceed, there's a matter I want to bring to your attention. Based on a reading of Prosecution Exhibit 6 for identification that we just retrieved [the transcript], and listening to Prosecution Exhibit 5 [the tape], this evidence may suggest to you that Berrian was attempting to set up another drug transaction with the accused, and that the accused may have tentatively agreed to do so.

> Now this evidence may be considered by you for its limited purpose of its tendency to show that the accused intended to join in a conspiracy, and that is the conspiracy that he is charged with.

> You'll be told when I instruct you on the law of conspiracy that one's intent must embrace each and every element of the target offense and in this case that would be distribution.

> Secondly, this information or this evidence has been provided to you to show the context in which the

statements were made about the transaction which Berrian testified took place on 27 December 1995, I believe.

Now, the accused has not been charged with participating in or attempting to participate in a second drug transaction. It will be unfair in the extreme to punish him for that.

We're only to concern ourselves with the charged offenses. You may not consider this evidence for any other purpose, other than whatever his original intent may have been on the alleged conspiracy or for the context of conversation and you may not conclude from this evidence that the accused is a bad person or his criminal tendency and he, therefore, committed the charged offenses.

Do you understand that? If so, please raise your hand.

An affirmative response from all the members.

The defense case focused on attacking the credibility of Smith and Berrian. Appellant did not testify. In closing arguments on findings, the prosecution repeatedly argued that appellant admitted his guilt during the tape-recorded conversation with Berrian.

## Discussion

Mil. R. Evid. 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The rule permits such evidence, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" This Court has consistently held that Mil. R. Evid. 404(b) is a "rule of inclusion." See, e.g., United States v. Tanksley, 54 MJ 169, 175-76 (2000); United States v. Baumann, 54 MJ 100, 104 (2000); United States v. Browning, 54 MJ 1, 6 (2000).

The test for admissibility of evidence of uncharged crimes is "whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime[.]"  United States v. Taylor, 53 MJ 195, 199 (2000), quoting United States v. Castillo, 29 MJ 145, 150 (CMA 1989).  In United States v. Reynolds, 29 MJ 105, 109 (CMA 1989), this Court adopted the following three-pronged test for admissibility of evidence of "other crimes, wrongs, or acts":  (1) the evidence must reasonably support a finding that the appellant committed the crime, wrong, or act; (2) it must make a fact of consequence more or less probable; and (3) its probative value must not be substantially outweighed by the danger of unfair prejudice.

Although most cases, including Reynolds, have involved evidence of a crime, wrong, or act that preceded the charged crime, this Court has applied the Reynolds test to subsequent acts as well.  See United States v. Dorsey, 38 MJ 244, 246 (CMA 1993) (subsequent bribery of a witness admitted to show intent to obstruct justice by earlier bribery of another witness).  This approach is consistent with prevailing federal practice under Fed. R. Evid. 404(b), on which the military rule is based.  See United States v. Latney, 108 F.3d 1446, 1448 (D.C. Cir. 1997); United States v. Buckner, 91 F.3d 34, 36 (7th Cir. 1996); United States v. Procopio, 88 F.3d 21, 29 (1st Cir.), cert. denied, 519 U.S. 1046 (1996); United States v. Olivo, 69 F.3d 1057, 1063 (10th Cir. 1995), cert. denied, 519 U.S. 906 (1996); United States v. Morsley, 64 F.3d 907, 911 (4th Cir. 1995), cert. denied, 516 U.S. 1065 (1996); United States v. Corona, 34 F.3d 876, 881 (9th Cir. 1994); 29 Am. Jur. 2d, Evidence § 415 (1994)

7

("Under FRE Rule 404(b), evidence of other crimes, wrongs, or acts may include acts committed prior to, simultaneous to, or after the charged offense . . . .") (footnotes omitted); Drafters' Analysis of Mil. R. Evid. 404(b), Manual, supra at A22-34.[2]

The third prong of the Reynolds test requires application of the balancing test under Mil. R. Evid. 403. A military judge enjoys wide discretion under Mil. R. Evid. 403. United States v. Phillips, 52 MJ 268, 272 (2000). Where the military judge properly weighs the evidence under Mil. R. Evid. 403 and articulates the reasons for admitting the evidence, we will reverse only for a clear abuse of discretion. United States v. Browning, 54 MJ 1, 7 (2000).

Applying the foregoing principles, we hold that the military judge did not abuse his discretion. We need not decide whether the military judge's theory, that appellant's willingness to sell drugs to Berrian on January 17 related back to appellant's intent to conspire with Smith on December 27, passes muster under Reynolds, because the uncharged misconduct was admissible for a

---

[2] We recognize the danger of unfair prejudice in admitting subsequent acts of misconduct. This danger was articulated as follows in United States v. Johnson, 27 F.3d 1186, 1193 (6th Cir. 1994):

> When jurors hear that a defendant has on [another] occasion[] committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact. . . . When prior act[] evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person . . . and that if he "did it [once] he probably did it again."

separate limited purpose, to show the subject matter and context of a conversation in which appellant admitted the charged conspiracy.  See United States v. Taylor, supra (military judge did not abuse discretion by admitting unredacted confession containing evidence of uncharged misconduct); cf. United States v. Matthews, 53 MJ 465 (2000) (unrelated subsequent drug ingestion not admissible to show previous knowing use of drugs); United States v. Hoggard, 43 MJ 1 (1995) (lustful intent in indecent assault 3-6 months after charged indecent act with another victim not admissible to show lustful intent during charged indecent assault).

We also are satisfied that any overbreadth in the military judge's limiting instruction was harmless error.  Appellant's tape-recorded admission of guilt was powerful evidence.  It greatly overshadowed any suggestion in the limiting instruction that appellant's willingness to sell drugs on January 17 might relate back to appellant's intent to conspire with Smith on December 27.  The prosecution did not rely on this tenuous theory.  Instead, the prosecution forcefully and repeatedly emphasized appellant's tape-recorded admission of guilt, "probably the most probative and damaging evidence that can be admitted" against an accused.  See Arizona v. Fulminante, 499 U.S. 279, 292 (1991).  On the basis of the entire record, we are satisfied that any overbreadth in the limiting instruction did not substantially influence the findings or sentence.  Art. 59(a), UCMJ, 10 USC § 859(a); Kotteakos v. United States, 328 U.S. 750, 765 (1946).

## Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

United States v. Young, No. 00-0279/MC

EFFRON, Judge  (concurring in part and in the result):

I disagree with the majority's theory that consideration of the entire conversation between appellant and the confidential informant was necessary in order to understand the context of two admissions made in the course of the conversation.  Ample evidence of the context already had been introduced through the confidential informant's testimony.  Under these circumstances, it was not necessary to admit into evidence the statements involving uncharged misconduct in order to understand the admissible portions of the conversation.  Nonetheless, I agree with the majority's view that any error in this case was rendered harmless by the substantial weight of appellant's admissions regarding the charged offenses.

United States v. Young, 00-0279/MC


    SULLIVAN, Judge (concurring in part and in the result and dissenting in part):

    Appellant was forced to defend against two separate incidents of drug dealings while only being charged with one.  In my view, the discussion of the "ounce sale" on January 17, 1997, should have been redacted from the tape-conversation evidence.  I conclude, as I did in United States v. Matthews, 53 MJ 465, 472 (2000) (Sullivan, J., concurring in the result), that the probative value of this evidence (to show the context of a conversation) clearly was substantially outweighed by the danger of unfair prejudice.  Nevertheless, I agree that appellant's tape-recorded admission of guilt renders this error harmless.  Art. 59(a).