*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Jaquan Q. GREENE-WATSON, Senior Airman**
United States Air Force, Appellant

**No. 24-0096**
Crim. App. No. 40293

Argued October 10, 2024 — Decided March 11, 2025

Military Judge: Brett A. Landry

For Appellant: *Major Heather M. Bruha* (argued); *Megan P. Marinos,* Esq.

For Appellee: *Colonel Matthew D. Talcott* (argued); *Mary Ellen Payne,* Esq. (on brief); *Captain Tyler L. Washburn.*

Judge JOHNSON delivered the opinion of the Court with respect to Part III.B., which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Judge HARDY joined, and with respect to Parts I., II., III.A., and IV., which Judge MAGGS joined. Chief Judge OHLSON filed a separate opinion concurring in part and in the judgment. Judge SPARKS filed a separate opinion concurring in part and in the judgment. Judge HARDY filed a separate opinion concurring in part and in the judgment, in which Judge SPARKS joined.

Judge JOHNSON delivered the opinion of the Court with respect to Part III.B., which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Judge HARDY joined, and with respect to Parts I., II., III.A., and IV., which Judge MAGGS joined.[1]

In this domestic violence case, Appellant argues that the United States Air Force Court of Criminal Appeals (AFCCA) erred in affirming the military judge's denial of a defense motion to exclude evidence of uncharged misconduct that allegedly occurred seventeen months after the charged conduct. We conclude that even if the military judge abused his discretion in admitting the subsequent, uncharged conduct under Military Rule of Evidence (M.R.E.) 404(b) to show a common plan or scheme to control his wife, the error did not materially prejudice Appellant's substantial rights. Therefore, we affirm the decision of the AFCCA.

## I. Background

On September 19, 2020, Appellant was at home with his wife, MGW, and their three-month-old son, JGW. MGW stepped outside for a Zoom call. When she came back inside to check on the baby, she heard crying. MGW testified that she opened the door to JGW's room and saw Appellant standing by the crib, holding a washcloth over the baby's face. When she tried to grab Appellant's hand, he picked JGW up and began shaking him. He then held JGW up in the air and told MGW, "If you come near me again, I'm going to throw him."

MGW testified that, after a while, she managed to take JGW from Appellant. Appellant swung his fist at her but missed. He swung again, missing MGW but grazing the top of JGW's head with his fist. MGW set the baby down, and Appellant pushed her to the ground. She remained there

---

[1] The Court heard oral argument in this case at Hampton University in Hampton, Virginia, as part of the Court's "Project Outreach." Project Outreach is a public awareness program demonstrating the operation of a federal court of appeals and the military justice system. We thank the participants.

for a minute, stunned, and then picked up the baby and ran downstairs. She retrieved her phone, which Appellant had thrown down the stairs, put JGW in his car seat, and began recording.

On the recording, Appellant and MGW can be heard arguing. She accused him of trying to kill their son by placing something over his mouth and said that JGW could have died. Appellant responded:

> I don't give a f[**]k. And if he did, then I'd be happy.
>
> . . . .
>
> . . . I swear to God, you better not come back in this house.
>
> . . . .
>
> . . . [A]fter you leave that door, if it's not with the police it is in your best interest if you wish to continue breathing and trying to live a life, to not come back through . . . that door.
>
> . . . .
>
> . . . Try to come back through that door without the police and see what happens.

MGW called 911. After police arrived, she took JGW to the hospital, where he remained for three days.

Appellant also called 911. He told the operator that his wife had instigated the altercation. He said he had tried to de-escalate the situation but acknowledged that "a few light grabs and shoves" were exchanged. Appellant told the 911 operator that MGW threatened to tell police he was abusing the baby. He explained that "usually" he could calm the crying baby by "playing with his bottom lip or his jaw" and so he "was pushing up and down on his little jaw trying to get him to be quiet." He insisted the baby was "fine."

Appellant was charged with assault and communicating a threat, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2018), and Article 115, UCMJ, 10 U.S.C. § 915 (2018). He was subject to a

no-contact order following the September 2020 incident, but after the order expired, he returned home and lived with MGW and JGW from October 2020 to February 2022.

On February 8, 2022, approximately three weeks before the court-martial was scheduled to begin, the Government provided notice of intent to admit evidence of uncharged acts that allegedly occurred on or after February 6, 2022. Relevant to this appeal,[2] the Government sought to admit the following uncharged acts pursuant to M.R.E. 404(b)(2):

> iii. The Accused physically got on top of M.G.W. and twisted her side with his hand, causing a 9 out of 10 pain level, leaving a red mark. The prosecution intends to offer this evidence of the Accused's common plan to perpetuate control over M.G.W.
>
> iv. The Accused balled up his fists and acted like he was going to hit M.G.W. The prosecution intends to offer this evidence of the Accused's common plan to control M.G.W.
>
> v. The Accused told M.G.W. he was going to "put a bullet" in her back. The prosecution intends to offer this evidence of the Accused's common plan to control M.G.W.
>
> vi. The Accused took M.G.W.'s phone and threw it, stating he did so "since [she's] gonna be a dumb b[**]ch" and record him. The prosecution intends to offer this evidence of the Accused's consciousness of guilt and common plan to control M.G.W.
>
> vii. M.G.W. ran to the vehicle with the couple's child, J.G.W. and locked herself inside. The Accused placed his foot behind the wheel so she couldn't reverse the vehicle and pounded on the windows, yelling at M.G.W. The prosecution intends to offer this evidence of the Accused's consciousness of guilt and common plan to control M.G.W.

---

[2] Additional evidence noticed by the Government was either abandoned by the Government before the military judge ruled or ruled inadmissible by the military judge. This additional evidence is not at issue on this appeal.

viii. M.G.W. left the residence with the couple's child and stayed in a hotel for safety. The Accused called her approximately seven times, demanding she return their vehicle. The Accused turned off all of the couple's credit cards and removed all the cash from the joint bank account. The prosecution intends to offer this evidence of the Accused's consciousness of guilt and common plan to control M.G.W.

ix. On or about 7 or 8 February 2022, the Accused shut off the utilities in M.G.W.'s home. The prosecution intends to offer this evidence of the Accused's consciousness of guilt and common plan to control M.G.W.

. . . .

e. In the past, the Accused has turned off all credit cards and taken her car keys following arguments. The prosecution intends to offer this evidence of the Accused's common plan to control M.G.W.

(First alteration in original.)

The defense filed a motion in limine to preclude admission of the evidence, arguing that there was no evidence the uncharged acts occurred, but even if they did, allegations that Appellant attempted to control MGW in 2022 did not make it more likely that he suffocated JGW or threatened MGW in 2020 as charged. According to the defense, the low probative value of the uncharged acts was substantially outweighed by the danger that they would influence the factfinder to "make a conscious or unconscious inferential leap towards a conclusion of propensity."

The military judge denied the defense motion and ruled the Government could introduce the uncharged acts. First, the military judge found that the evidence, including a police report, MGW's statements during a law enforcement interview, and an oral stipulation of her expected testimony, reasonably supported a finding by a preponderance of the evidence that the uncharged acts occurred.

Then, the military judge determined that the evidence was admissible for one of the proffered purposes but not the

5

other. According to the military judge, "evidence of a domestic dispute that occurred approximately 17 months after the charged misconduct alleged in this case cannot be evidence of the accused's consciousness of guilt of having committed the charged misconduct" or his intent at the time of the charged offenses, absent evidence that the uncharged misconduct was Appellant's attempt to intimidate or take revenge on MGW for her initial report or linked in any other way to his intent at the time of the charged offenses. Nevertheless, the military judge found "sufficient" similarities between the charged and uncharged misconduct with respect to "the specifics of the accused's behavior when he is frustrated with MGW" to conclude the uncharged misconduct was evidence of a common plan or scheme to control his wife and undermine any attempts she made to report him. The military judge reasoned:

> In each instance, the accused is alleged to have offered or engaged in violence against MGW. Additionally, he is alleged to have made threats against MGW. Further, all of these behaviors, on both occasions, are alleged to have taken place while MGW was holding or in close proximity to JGW, causing fear on the part of MGW that their child would be involved or injured somehow in their altercation. Moreover, in both the incident underlying the charged offenses and the uncharged incident addressed here, the accused is alleged to have engaged in certain acts to frustrate MGW's ability or willingness to report these allegations by taking actual steps to prevent her from reporting and to increase his control over her so as to deter her from making a report. Finally, evidence exists that the accused, in each case, took steps to call 911, which the Government intends to argue shows a common plan or scheme to undercut what he anticipates MGW's report to authorities will be following their domestic disputes.

The military judge concluded that the probative value of the evidence was not outweighed by the danger of unfair prejudice or any other factor listed in M.R.E. 403. Accordingly, he ruled that the uncharged acts were admissible under M.R.E. 404(b) as evidence of Appellant's common plan

or scheme. He emphasized that he would consider this evidence "only for the limited purpose that it may establish a common scheme or plan and not for reasons prohibited by M.R.E. 404(a) or for propensity purposes."

Consistent with the military judge's ruling, MGW testified at trial that she and Appellant argued over the baby on February 6, 2022. She testified that after accusing her of making excuses to avoid watching the baby, Appellant pinned her to the bed and twisted her side. He told her, "I will put a bullet in your back." Upon releasing her, he followed her into another room and said, "I'm going to beat the s[***] out of you." Then he grabbed her phone and tried to throw it out the window.

MGW testified that she ran from the house and locked herself into her car with JGW. Appellant was punching the windows and trying to get in. He told her she was not allowed to leave and put his foot behind the wheel to prevent her from driving away. Then he called the police and reported that she was trying to leave with his car and his son. After police arrived, MGW heeded their advice to leave the home. She soon discovered that her credit cards had been frozen and her joint bank account drained. Upon returning home a few days later, she discovered that all the utilities had been turned off.

In closing, the Government argued that the uncharged events of February 6, 2022, provided context for the charged offense of communicating a threat in violation of Article 115, UCMJ. After laying out the elements of the offense, the Government argued that the uncharged conduct established the wrongfulness of the threat:

> [T]urning back to the context, the intent behind it, the accused is trying to control the victim and prevent her from reporting. One of the ways in which you know that happens is in the context of the relationship from the incident that happened in February of this year. The threats tied to the fact that there is the common plan to control MGW. When she's doing something that he doesn't want her to do, particularly in regards to their son, he's

trying to control her with verbal threats and physical threats, which all should be considered in context to the fact that this threat is part of this common plan to control Mrs. MGW. He tries to restrict her ability to report by taking her phone and throwing it, by being physically violent with her, by physically threatening her. All of this can be considered together to look at the intent behind his actions, which is to control her. And that's the purpose of the threat, and that's why this threat is wrongful.

Appellant was convicted by a military judge sitting as a general court-martial, contrary to his pleas, of one specification of communicating a threat in violation of Article 115, UCMJ. Consistent with his pleas, the military judge found Appellant not guilty of one specification of assault by suffocating a child in violation of Article 128, UCMJ. The military judge sentenced Appellant to a bad-conduct discharge, confinement for ninety days, reduction to the grade of E-1, and a reprimand. The convening authority deferred the reduction in rank until the entry of judgment and waived automatic forfeitures for the benefit of MGW and JGW.

The AFCCA affirmed the military judge's ruling on the defense motion in limine and affirmed the findings and sentence. *United States v. Greene-Watson*, No. ACM 40293, 2023 CCA LEXIS 542, at *2, 2023 WL 8943232, at *1 (A.F. Ct. Crim. App. Dec. 27, 2023) (unpublished). We granted review of the following issue:

> Whether the Air Force Court erred in affirming the military judge's decision to admit evidence of domestic violence occurring 17 months after the charged offense to show a common scheme or plan under Mil. R. Evid. 404(b)—using a different rationale than the military judge.

*United States v. Greene-Watson*, 84 M.J. 458, 458 (C.A.A.F. 2024) (order granting review). For the reasons stated below, we answer the granted issue in the negative and affirm the decision of the AFCCA.

## II. Standard of Review

We review the military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Wilson*, 84 M.J. 383, 390 (C.A.A.F. 2024). "Military judges abuse their discretion (1) if the findings of fact upon which they predicate their ruling are not supported by the evidence of record; (2) if they use incorrect legal principles; or (3) if their application of the correct legal principles to the facts is clearly unreasonable." *Id.*

## III. Discussion

Appellant argues that the military judge abused his discretion by allowing the Government to introduce evidence of uncharged acts that occurred seventeen months after the charged time frame to show a common plan or scheme to control MGW during the charged offenses. He argues that the military judge failed to identify a fact of consequence made more or less likely by the subsequent uncharged conduct and failed to conduct a thorough M.R.E. 403 balancing test articulating the probative value and weight of the evidence. He contends he was prejudiced by the admission of evidence of uncharged conduct that was more egregious than the charged conduct. Additionally, he argues that the AFCCA erroneously substituted its own rationale that the uncharged conduct was probative of wrongfulness and could be used to show intent. We address each of these contentions in turn.

### A. M.R.E. 404(b) evidence

"[P]ropensity evidence is a generally impermissible form of character evidence in which members 'prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" *United States v. Quezada*, 82 M.J. 54, 59 (C.A.A.F. 2021) (quoting M.R.E. 404(b)(1)). M.R.E. 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." M.R.E. 404(b)(1). However, "[t]his evidence may be admissible for another purpose,

such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." M.R.E. 404(b)(2). Where M.R.E. 404(b) evidence is offered for a permissible, non-propensity purpose, the military judge "must conduct a M.R.E. 403 balancing test and exclude this otherwise admissible evidence 'if its probative value is substantially outweighed by a danger of . . . unfair prejudice.' " *Wilson*, 84 M.J. at 390 (alteration in original) (quoting M.R.E. 403).

We review a military judge's decision to admit M.R.E. 404(b) evidence under a three-part test articulated by our predecessor in *United States v. Reynolds*: (1) does the evidence reasonably support a finding that the accused committed a specific act; (2) is a fact of consequence made more or less probable by the existence of this evidence; and (3) is the probative value of the evidence substantially outweighed by the danger of unfair prejudice? 29 M.J. 105, 109 (C.M.A. 1989). "If the admitted evidence fails to meet any of the factors laid out in *Reynolds*, the military judge will have erred," and we "must then assess the prejudice, if any, resulting from that error." *Wilson*, 84 M.J. at 391.

We conclude that each of the three *Reynolds* factors is satisfied in this case. First, the Government proffered sufficient evidence to reasonably support a finding that the uncharged conduct occurred. This evidence included a police report describing the February 6, 2022, incident, recordings of MGW's statements to police, and a stipulation of MGW's expected testimony.

Second, the uncharged conduct made a fact of consequence—the wrongfulness of the charged threat—more likely. The elements of the offense of communicating a threat, as charged, are (a) that Appellant communicated certain language expressing a present determination or intent to kill MGW if she returned to their shared residence; (b) that the communication was made known to MGW; and (c) that the communication was wrongful. *Manual for Courts-Martial, United States* pt. IV, para. 53.b.(1) (2019 ed.). The military judge found that Appellant engaged in the uncharged conduct on February 6, 2022, to "frustrate

MGW's ability or willingness to report these allegations by taking actual steps to prevent her from reporting and to increase his control over her so as to deter her from making a report." Furthermore, the military judge found sufficient similarities between the charged and uncharged conduct to permit the Government to argue that taken together, they demonstrated that Appellant acted pursuant to a common plan or scheme to control MGW and prevent her from reporting the alleged domestic abuse.

Although the military judge did not explicitly state that the uncharged acts made the wrongfulness of the charged threat more probable, we agree with the AFCCA that this conclusion was implicit in the military judge's ruling.[3] As the AFCCA explained, "[t]he existence of a common plan or scheme by Appellant to intimidate MGW from reporting his threatening behavior makes it more likely that his communication was 'wrongful' because it indicates his communications were not in jest or idle banter—rather, they were serious attempts to intimidate her." *Greene-Watson*, 2023 CCA LEXIS 542, at *35-36, 2023 WL 8943232, at *14. Moreover, trial counsel argued in closing, without objection, that the February 6, 2022, uncharged acts were evidence of the wrongfulness of the charged offense of communicating a threat.

We are unpersuaded by Appellant's contention that acts occurring seventeen months after the charged conduct are "too [r]emote" to prove a fact of consequence under M.R.E. 404(b). Neither the rule nor our precedent imposes such a

---

[3] Because we agree with the AFCCA's conclusion that the military judge implicitly ruled that the evidence could be offered to show wrongfulness, we do not reach the question whether the AFCCA was correct in stating that it could affirm the military judge's decision *even if the military judge did not implicitly rule* that the evidence could be offered to show wrongfulness. *Greene-Watson*, 2023 CCA LEXIS 542, at *36 n.18, 2023 WL 8943232, at *14 n.18.

temporal limit on M.R.E. 404(b) evidence. To the contrary, we have long recognized that evidence of both prior and subsequent uncharged conduct may be properly admitted under M.R.E. 404(b), "consistent with prevailing federal practice under Fed. R. Evid. 404(b), on which the military rule is based." *United States v. Young*, 55 M.J. 193, 196 (C.A.A.F. 2001) (citing cases); *see United States v. James*, 63 M.J. 217, 222 (C.A.A.F. 2006) ("In *United States v. Young*, . . . we joined the 'prevailing federal practice,' which did not limit 'other' acts to 'prior' acts."). "It is the fact of the other act that makes it probative, not whether it happened before or after the act now charged." *James*, 63 M.J. at 221 (finding no temporal limitation on the admissibility of subsequent uncharged misconduct under M.R.E. 413 and 414 where "[t]he rules simply discuss 'one or more offenses' with absolutely no mention of when the offense(s) might have occurred").

We also reject Appellant's argument that uncharged conduct must be virtually identical to the charged conduct to be admissible as evidence of a common plan or scheme under M.R.E. 404(b). In *United States v. Hyppolite*, we held that a military judge did not abuse his discretion by admitting evidence of conduct that was similar but not identical to other conduct as M.R.E. 404(b) evidence of the accused's "specific common plan . . . to engage in sexual conduct with his friends after they have been drinking and were asleep or falling asleep." 79 M.J. 161, 166 (C.A.A.F. 2019) (internal quotation marks omitted). While there were some differences between the misconduct allegations, they also shared "common factors," including "the relationship of the alleged victims to the accused (friends), the circumstances surrounding the alleged commission of the offenses (after a night of drinking when the alleged victim was asleep or falling asleep), and the nature of the misconduct (touching the alleged victims' genitalia)." *Id.* (internal quotation marks omitted). Here, as in *Hyppolite*, the M.R.E. 404(b) evidence was substantially similar to the charged domestic abuse allegations in that both involved Appellant physically assaulting MGW and threatening to hurt her after

they argued over the baby and while the baby was in her arms or close by, taking her phone away, and calling 911 to thwart her attempt to report him to law enforcement. Therefore, we conclude that the second prong of the *Reynolds* test was satisfied.[4]

As to the third *Reynolds* prong, the military judge did not articulate the reasoning for his determination that the probative value of the uncharged acts was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the members, considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Therefore, his decision is entitled to less deference than if he had articulated his reasoning. *United States v. Ediger*, 68 M.J. 243, 248-49 (C.A.A.F. 2010).

Nevertheless, we find no error in the military judge's M.R.E. 403 balancing. The probative value of the uncharged acts was relatively low in light of the strength of the Government's case, which included a recording of Appellant making the charged threat to MGW.[5] Moreover,

---

[4] Appellant argues that *United States v. Morrison*, 52 M.J. 117, 120 (C.A.A.F. 1999), requires the uncharged conduct to be almost identical to the charged offense to prove a common plan or scheme. It is true that the Court in *Morrison, id.* at 122, stated that this Court's opinion in *United States v. Munoz*, 32 M.J. 359 (C.M.A. 1991), was consistent with the Court's decision in *United States v. Brannan*, 18 M.J. 181, 183 (C.M.A. 1984), where the Court held that uncharged acts "must be almost identical to the charged acts" to be admissible as evidence of a common plan or scheme. But the Court later clarified, in *Hyppolite*, that *Munoz* required only that there be "common factors" between the charged and uncharged acts for a military judge to admit evidence to prove a scheme or plan, and held that "it was within the discretion of the two military judges to find a common plan or scheme based on the *common factors* among the specifications." 79 M.J. at 165-66 (emphasis added).

[5] The evidence did not figure prominently in the Government's case. Indeed, trial counsel made only a brief reference to the M.R.E. 404(b) evidence in closing, arguing that it provided context to understand Appellant's intent to control MGW.

there is little risk of unfair prejudice in this military judge-alone trial where the military judge emphasized that he would consider the uncharged acts only for the limited purpose of establishing a common scheme or plan and not as improper propensity evidence or for any purpose prohibited by M.R.E. 404(b). The military judge's finding that Appellant was not guilty of assault by strangulation further supports the conclusion he did not improperly consider the uncharged conduct.

## B. Prejudice

Finally, we conclude that even if the military judge erred, the error did not have a substantial influence on the findings. *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019) (testing preserved nonconstitutional evidentiary error to determine "whether the error had a substantial influence on the findings" (internal quotation marks omitted) (citation omitted)). In determining prejudice arising from nonconstitutional evidentiary errors, we weigh: " '(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question.' " *Id.* (quoting *United States v. Norman*, 74 M.J. 144, 150 (C.A.A.F. 2015); *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999)).

Here, as noted above, even without the uncharged conduct the Government's case was strong, especially given that the threatening statement was recorded and admitted into evidence. Although the defense highlighted inconsistencies in MGW's various reports to medical and law enforcement personnel to discredit her testimony that she was "scared" by his threat, the defense case with respect to the threat was comparatively weak.[6]

Turning to the materiality and the quality of the evidence, these factors favor a finding of harmlessness. "When

---

[6] The defense case with respect to the threat stands in marked contrast to the compelling defense that resulted in acquittal on the strangulation offense.

assessing the materiality and quality of the evidence, this Court considers the particular factual circumstances of each case." *United States v. Washington*, 80 M.J. 106, 111 (C.A.A.F. 2020). "In examining these factors, we essentially are assessing how much the erroneously admitted evidence may have affected the court-martial." *Id.* We agree with the AFCCA's determination that the uncharged conduct was similar to the charged conduct in that both involved death threats. *Greene-Watson*, 2023 CCA LEXIS 542, at *40, 2023 WL 8943232, at *15 (concluding that "[t]he gravamen of the uncharged threat was not significantly greater than the charged threat"). The similarity of the uncharged threat to the charged threat lessened its materiality, and thereby lessened its prejudicial impact on the findings. *Wilson*, 84 M.J. at 396 (concluding that the prejudicial impact of erroneously admitted M.R.E. 404(b) evidence is "minimal" where it was "of the same nature" as the charged conduct); *United States v. Hursey*, 55 M.J. 34, 36 (C.A.A.F. 2001) (holding that erroneous admission of uncharged misconduct evidence was harmless where the record "was replete with admissible evidence" of similar misconduct), *cited in Washington*, 80 M.J. at 111. At the same time, the quality of the evidence of the uncharged conduct was lower than the quality of the evidence of the charged threat for which Appellant was convicted, which was captured by MGW's cell phone and played in court.

## C. Conclusion

In light of the foregoing, we conclude that the military judge did not abuse his discretion in admitting the uncharged conduct to prove Appellant's common plan or scheme to control MGW, and even if he erred, the error did not substantially influence the findings.

## IV. Judgment

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge OHLSON, concurring in part and in the judgment.

I concur with the Court's opinion insofar as it finds that any error did not prejudice Appellant's substantial rights. Because I believe the case can be resolved on this basis alone, I only join Part III.B. of the Court's opinion relating to its determination of no material prejudice.

Judge SPARKS, concurring in part and in the judgment.

I join Part III.B. of the Court's opinion in recognizing that Appellant was not prejudiced by the admission of Military Rule of Evidence (M.R.E.) 404(b) other acts evidence. I also join Judge Hardy in his expression of concern regarding where our precedent is leading us on exactly what constitutes evidence of a common plan or scheme under M.R.E. 404(b). While conduct need not be identical, too often evidence admitted under the M.R.E. 404(b) common scheme or plan exception is merely evidence of parallel offenses or a temporally proximate series of events. What we seem to have here is a young man with a short temper. It is unlikely his behavior or motivations in either the charged or uncharged instances stemmed from anything more calculated than his inability to control his anger. However, because of what I believe may be a lack of clarity in this area, like Judge Hardy, I cannot conclude the military judge abused his discretion in admitting the evidence. I too implore the Court to remain open to reconsidering the proper scope of the common plan or scheme exception. Nonetheless, I feel compelled to address my separate concerns about applying the balancing test in M.R.E. 403 in military judge-alone trials.

M.R.E. 404(b)(1)-(2) provides that "[e]vidence of a crime, wrong, or other act. . . . may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." If a military judge determines that the proffered evidence is properly admissible under M.R.E. 404(b), he or she then must conduct a M.R.E. 403 balancing test and exclude this otherwise admissible evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." This balancing test serves as a means of guarding against "[t]he general risk . . . that members will treat evidence of uncharged acts as character evidence and use it to infer that an accused has acted in character, and thus convict." *United States v. Staton*, 69 M.J. 228, 232 (C.A.A.F. 2010).

Appellant argues that the military judge's M.R.E. 403 balancing test was insufficient. Here, the military judge

*United States v. Greene-Watson*, No. 24-0096/AF
Judge SPARKS, concurring in part
and in the judgment

broadly found that "the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice or any other factor that might be taken into consideration under [M.R.E. 403]." This is effectively a recitation of the rule.

The Court's opinion correctly finds that the military judge did not err in his M.R.E. 403 balancing test. However, I would go further. It is essential to note that this was a military judge-alone trial. The risk of relevant evidence causing unfair prejudice in a bench trial is nonexistent because the risk addressed in *Staton* is eliminated by the absence of a members panel. As a result, a M.R.E. 403 balancing test should not be required.

Not requiring the M.R.E. 403 balancing test in a military judge-alone trial would bring this Court in line with most other federal courts.[1] The United States Court of

---

[1] The vast majority of federal courts have endorsed the idea that, in the judge-alone context, the risk of prejudice is significantly reduced or eliminated outright. *See Clark v. Quiros*, No. 3:19-cv-575 (VAB), 2024 U.S. Dist. LEXIS 118046, at \*6, 2024 WL 3292540, at \*2 (D. Conn. July 3, 2024) ("In nonjury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence." (citation omitted) (internal quotation marks omitted)); *see also United States v. Hall*, 202 F.3d 270 (6th Cir. 2000) (per curiam) (unpublished table decision) ("In bench trials, the application of the unfair prejudice portion of Rule 403 has been seen as an unnecessary and useless procedure." (citation omitted) (internal quotation marks omitted)); *United States v. Shukri*, 207 F.3d 412, 419 (7th Cir. 2000) ("In a bench trial, we assume that the district court was not influenced by evidence improperly brought before it unless there is evidence to the contrary."); *United States v. De Anda*, No. 18-cr-00538-TSH-1, 2019 U.S. Dist. LEXIS 110880, at \*13, 2019 WL 2863602, at \*4 (N.D. Cal. July 2, 2019) ("[T]he Court finds [defendant's] Rule 403 argument inapplicable here because this action will be tried in a bench trial."); *Woods v. United States*, 200 F. App'x 848, 853 (11th Cir. 2006) ("[T]he part of Rule 403 that authorizes exclusion of evidence because of its unfair prejudicial impact 'has no logical application to bench trials.'" (quoting *Gulf States Utilities Co. v. Ecodyne Corp*, 635 F.2d 517, 519 (5th Cir. Unit A 1981))); *United States ex rel. Morsell v. NortonLifeLock, Inc.*, 567 F. Supp. 3d 248, 261 (D.D.C. 2021) ("The Court similarly is not concerned with unfair

*United States v. Greene-Watson*, No. 24-0096/AF
Judge SPARKS, concurring in part
and in the judgment

Appeals for the Fifth Circuit takes the position that in bench trials "excluding relevant evidence on the basis of 'unfair prejudice' is a useless procedure." *Gulf States Utilities Co.*, 635 F.2d at 519. In a bench trial, the judge can "exclude those improper inferences from his mind in reaching a decision." *Id.* The United States Court of Appeals for the Fourth Circuit has taken the position that in a bench trial "evidence should not be excluded under 403 on the ground that it is unfairly prejudicial." *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994). In an unpublished opinion, the United States Court of Appeals for the Tenth Circuit adopted the reasoning of the Fourth and Fifth Circuits and stated that "Rule 403 does not provide a valid basis for contesting the admission" of evidence in a bench trial. *United States v. Kienlen*, 349 F. App'x 349, 351 (10th Cir. 2009). The military justice system stands in the minority by requiring military judges in a military judge-alone trial to conduct a M.R.E. 403 balancing test.

The M.R.E. 403 balancing test exists to prevent enflaming the passions of servicemembers upon hearing prejudicial evidence. Such an issue is not a concern in a bench trial. "A military judge is presumed to know the law and apply it correctly, is presumed capable of filtering out inadmissible evidence, and is presumed not to have relied on such evidence on the question of guilt or innocence." *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000). At two separate places in his ruling, the military judge made clear the evidence would not be used for a propensity purpose:

> This is distinguishable from a propensity argument. . . .
>
>     . . . .
>
>     . . . the court will consider this M.R.E 404(b) evidence only for the limited purpose that it may establish a common scheme or plan and not for reasons prohibited by M.R.E. 404(a) or for propensity purposes.

---

prejudice from this document given that this will be a bench trial.").

*United States v. Greene-Watson*, No. 24-0096/AF
Judge SPARKS, concurring in part
and in the judgment

. . . .

. . . As the finder of fact in this military judge alone case, the Court will consider this M.R.E. 404(b) evidence only for the limited purpose that it may establish a common scheme or plan and not for reasons prohibited by M.R.E. 404(a) or for propensity purposes.

In a bench trial, the individual evaluating the evidence under M.R.E. 403 is determining whether they themselves will be prejudiced by the admission of said evidence. It is a legal fiction to pretend that once a military judge has reviewed the evidence that they could then put said evidence out of their mind as if they never saw it. Once, however, the military judge has stated that they will not misuse the evidence, we must trust the presumption that military judges know the law, can filter out inadmissible evidence, and that they have not relied on such evidence on the question of guilt or innocence.

For these reasons, I respectfully concur in part and in the judgment.

Judge HARDY, with whom Judge SPARKS joins, concurring in part and in the judgment.

Because I agree that Appellant was not prejudiced by the admission of evidence of his uncharged conduct under Military Rule of Evidence (M.R.E.) 404(b), I join Part III.B. of the Court's opinion. I also agree that the military judge did not abuse his discretion by admitting that evidence, but I write separately to voice my concern about this Court's precedent broadly interpreting the scope of the M.R.E. 404(b)(2) exception allowing the admission of otherwise inadmissible evidence for the purpose of proving a common scheme or plan. *See, e.g., United States v. Munoz*, 32 M.J. 359 (C.M.A. 1991); *United States v. Johnson*, 49 M.J. 467 (C.A.A.F. 1998); *United States v. Hyppolite*, 79 M.J. 161 (C.A.A.F. 2019). In a future case, I believe that the Court should reconsider that precedent to prevent the common scheme or plan exception from swallowing M.R.E. 404(b)(1)'s general rule prohibiting the admission of propensity evidence.

In a court-martial, the President has prohibited the admission of evidence of a crime, wrong, or other act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," M.R.E. 404(b)(1), but nevertheless allows the admission of such evidence for another purpose including proving the existence of a "plan." M.R.E. 404(b)(2). This Court and its predecessor have long interpreted this rule as applying the exception from civilian courts allowing "the introduction of evidence tending to show the existence of a plan, design or scheme on the part of an accused embracing the offenses with the commission of which he is charged." *United States v. Haimson*, 5 C.M.A. 208, 227, 17 C.M.R. 208, 227 (1954).

Under this Court's precedent, the distinction between admitting evidence to demonstrate propensity—an impermissible purpose under M.R.E. 404(b)(1)—and the admission of evidence to prove a common scheme or plan—a permissible purpose under M.R.E. 404(b)(2)—can be difficult to explain. Here, for instance, the military judge admitted the challenged evidence to demonstrate that Appellant acted according to a common scheme or plan of violence and

intimidation against his wife. Yet, it is not clear how this differs meaningfully from admitting the evidence to demonstrate that Appellant simply possesses a propensity to act violently towards his spouse.

To the casual observer, Appellant's charged and uncharged acts against his wife would not appear to be part of any greater plan or scheme. Although Appellant repeatedly lashed out at his wife, the evidence does not suggest that he acted systematically in pursuit of some preexisting, overarching goal. *See Becker v. ARCO Chemical Co.*, 207 F.3d 176, 195-97 (3d Cir. 2000) (examining when evidence may be admitted to prove a plan or scheme under Fed. R. Evid. 404(b)(2)). Instead, the uncharged conduct seems to establish nothing more than how Appellant reacts when he becomes angry and frustrated with his wife. As Judge Sparks aptly puts it, Appellant simply appears to be "a young man with a short temper." *United States v. Greene-Watson*, __ M.J. __, __ (1) (C.A.A.F. 2025) (Sparks, J., concurring in part and in the judgment).

Many commentators suggest that evidence of uncharged acts should only be admitted to establish a plan or scheme if that evidence demonstrates a conscious commitment by the accused to a specific premeditated course of conduct. *See Becker*, 207 F.3d at 195-98 (reviewing secondary sources). But unfortunately for Appellant, this Court has taken a different approach, repeatedly holding that that the Government may offer evidence of the accused's uncharged misconduct that would otherwise be inadmissible as propensity evidence under M.R.E. 404(b)(1) so long as that conduct shares "common factors" with the charged conduct. *Hyppolite*, 79 M.J. at 166 (C.A.A.F. 2019) (first citing *Munoz*, 32 M.J. at 363; then citing *Johnson*, 49 M.J. at 475).

Appellant is correct that this Court's predecessor once held that uncharged acts needed to be almost identical to the charged acts to be admissible to prove a plan or scheme under M.R.E. 404(b)(2). *United States v. Brannan*, 18 M.J. 181, 183 (C.M.A. 1984) (citing *United States v. Danzey*, 594 F.2d 905, 913 (2d Cir. 1979)). But more recently, this Court has applied a much less demanding standard. In *Munoz*,

this Court affirmed the military judge's conclusion that uncharged acts were admissible under M.R.E. 404(b)(2) when those acts shared "common factors" with the charged offenses. 32 M.J. at 363-64. And in *Johnson*, the Court concluded that similar "factors" between the proffered evidence of uncharged acts and the charged offenses was sufficient for the evidence to be admissible to prove a plan or scheme. 49 M.J. at 475. In 2019, this Court expressly relied on *Munoz* and *Johnson* in concluding that two military judges did not abuse their discretion in admitting evidence of other crimes to show that the accused acted pursuant to a " 'common plan to engage in sexual conduct with his friends after they have been drinking or were asleep or falling asleep' " when the various crimes shared "common factors." *Hyppolite*, 79 M.J. at 163, 166.

In light of *Munoz*, *Johnson*, and *Hyppolite*, I cannot conclude that the military judge in this case abused his discretion because his ruling was not "arbitrary, fanciful, clearly unreasonable[,] or clearly erroneous." *United States v. Uribe*, 80 M.J. 442, 446 (C.A.A.F. 2021) (internal quotation marks omitted) (citation omitted). Although Appellant makes a strong argument that the Government proffered the evidence of Appellant's additional, uncharged misconduct to establish that he has a propensity to commit crimes like the one with which he was charged, our precedent authorizes military judges to find a common plan or scheme based solely on "common factors" among the various acts. *Hyppolite*, 79 M.J. at 166.[1] Moreover, as Judge Johnson rightly points out, the risk of prejudice to Appellant was extremely low in this military judge-alone case in which the military judge expressly stated that he would only consider the evidence of the uncharged acts for the limited

---

[1] This expansive interpretation of the common scheme or plan exception evolved in cases dealing with child abuse, where courts faced difficult evidentiary circumstances. *See Munoz*, 32 M.J. at 359 (admitting evidence of uncharged indecent acts with a child); *Johnson* 49 M.J. at 468 (same). Today, M.R.E. 413 and M.R.E. 414 would govern many such cases and would likely provide avenues for admitting evidence that were not previously available when these precedents were established.

purpose of establishing a common scheme or plan and not as improper propensity evidence. *Greene-Watson*, __ M.J. at __ (14). For these reasons, I agree that the decision of the AFCCA should be affirmed.

Nevertheless, in a future case I would be open to reconsidering the proper scope of the "common scheme or plan" exception. Doing so would allow this Court to ensure that we are sufficiently protecting defendants against the unfair prejudice that flows from propensity evidence while still allowing for the admission of relevant, probative evidence as authorized by the President.